**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>ACANDS, INC. | **02-12687 (JKF)** |
| In re:<br>SPECIALTY PRODUCTS HOLDING CORP. | **10-11780 (JKF)** |
| In re:<br>KAISER ALUMINUM CORP. | **02-10429 (JKF)** |
| In re:<br>OWENS CORNING | **00-03837 (JKF)** |
| In re:<br>USG CORP. | **01-02094 (JKF)** |
| ACANDS ASBESTOS SETTLEMENT TRUST; KAISER ALUMINUM & CHEMICAL CORPORATION ASBESTOS PERSONAL INJURY TRUST; OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST; and UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY TRUST (the "TRUSTS");<br>and<br>TRUST ADVISORY COMMITTEE FOR THE ACANDS ASBESTOS SETTLEMENT TRUST; TRUST ADVISORY COMMITTEE FOR THE KAISER ALUMINUM & CHEMICAL CORPORATION ASBESTOS PERSONAL INJURY TRUST; TRUST ADVISORY COMMITTEE FOR THE OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST; and TRUST ADVISORY COMMITTEE FOR THE UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY TRUST (the "TACS");<br>and<br>HON. DEAN M. TRAFELET (RET.), THE LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS AGAINST THE UNITED | **Adv. Pro. No. 10-53702 (JKF)**<br>**Adv. Pro. No. 10-53712 (JKF)**<br>**Adv. Pro. No. 10-53719 (JKF)**<br>**Adv. Pro. No. 10-53720 (JKF)**<br>**Adv. Pro. No. 10-53721 (JKF)** |

STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST (the "FUTURES REPRESENTATIVE"),

Plaintiffs,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY; FIRST STATE INSURANCE COMPANY; NEW ENGLAND INSURANCE COMPANY; NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA; AMERICAN HOME ASSURANCE CO.; GARLOCK SEALING TECHNOLOGIES, LLC.; SPECIALTY PRODUCTS HOLDING CORP.; DELAWARE CLAIMS PROCESSING FACILITY, LLC; and VERUS CLAIMS SERVICES, LLC,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT HARTFORD'S MOTION TO DISMISS**

James P. Ruggeri
Joshua D. Weinberg
**SHIPMAN & GOODWIN LLP**
1133 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 469-7750
Fax: (202) 469-7751

Craig Goldblatt
Danielle Spinelli
Joel Millar
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363

Richard M. Beck (DE Bar No. 3370)
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone: (302) 552-5510
Fax: (302) 426-9193

Dated: November 18, 2010

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 4

ARGUMENT ..... 9

I. THIS COURT HAS NO SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' ACTION ..... 10

A. Section 1334 Provides No Basis For Jurisdiction ..... 11

B. Plaintiffs' Suit Has No "Close Nexus" To The Bankruptcy Cases ..... 14

II. THIS COURT HAS NO AUTHORITY TO ENJOIN THE STATE-COURT PROCEEDINGS ..... 18

A. The Injunction Is Barred By The Anti-Injunction Act ..... 18

B. The Injunction Is Barred Under Principles Of Equity And Federal-State Comity ..... 24

CONCLUSION ..... 29

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*,
398 U.S. 281 (1970) .......... 19, 20, 21, 22

*Carlough v. Amchem Prods., Inc.*,
10 F.3d 189 (3d Cir. 1993) .......... 21

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) .......... 14

*Chick Kam Choo v. Exxon Corp.*,
486 U.S. 140 (1988) .......... 3, 18, 19, 22

*Coruzzi v. New Jersey*,
705 F.2d 688 (3d Cir. 1983) .......... 25, 26

*Craig's Stores of Tex., Inc.*,
266 F.3d 388 (5th Cir. 2001) .......... 4, 10, 16

*District of Columbia Court of Appeals v. Feldman*,
460 U.S. 462 (1983) .......... 3, 28

*Drelles v. Metropolitan Life Ins. Co.*,
357 F.3d 344 (3d Cir. 2003) .......... 22, 23

*Dubinka v. Judges of the Superior Ct.*,
23 F.3d 218 (9th Cir. 1994) .......... 25

*Ellman v. Hinkes*,
2007 WL 632968 (N.J. Super. Ct. Mar. 5, 2007) .......... 27

*Falise v. The Am. Tobacco Co.*,
241 B.R. 48 (E.D.N.Y. 1999) .......... 2, 10, 16 17

*In re Airadigm Commc'ns, Inc.*,
616 F.3d 642 (7th Cir. 2010) .......... 16

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) .......... 20

*In re Conseco, Inc.*,
No. 02-49672, 2004 Bankr. LEXIS 567 (Bankr. N.D. Ill. Jan. 28, 2004) ........................26

*In re Cortellessa*,
No. 05-24258, 2006 Bankr. LEXIS 1435 (Bankr. E.D. Pa. June 9, 2006) .......................26

*In re Davis*,
691 F.2d 176 (3d Cir. 1982)..........................................................................19, 25

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
134 F.3d 133 (3d Cir. 1998)..........................................................................3, 20, 21

*In re Grand Jury Proceedings (Wright II)*,
654 F.2d 268 (3d Cir. 1981) ..........................................................................25

*In re Gryphon at the Stone Mansion, Inc.*,
204 B.R. 460 (Bankr. W.D. Pa. 1997), *rev'd on other grounds*, 216 B.R. 764
W.D. Pa. 1997), *aff'd*, 166 F.3d 552 (3d Cir. 1999) ........................................................16

*In re Guild & Gallery Plus, Inc.*,
72 F.3d 1171 (3d Cir. 1996)..........................................................................3, 12, 13

*In re Kmart Corp.*,
307 B.R. 586 (Bankr. E.D. Mich. 2004) ..........................................................26

*In re Marcus Hook Dev. Park, Inc.*,
943 F.2d 261 (3d Cir. 1991)..........................................................................12

*In re Metromedia Fiber Network, Inc.*,
416 F.3d 136 (2d Cir. 2005)..........................................................................20

*In re Resorts Int'l, Inc.*,
372 F.3d 154 (3d Cir. 2004)..........................................................................10, 11, 16, 17

*In re Shenango Group Inc.*,
501 F.3d 338 (3d Cir. 2007)..........................................................................17

*In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*,
MDL No. 764, 1997 U.S. Dist LEXIS 4410 (E.D. Pa. Apr. 2, 1997) .............................26

*In re Texas Pig Stands, Inc.*,
610 F.3d 937 (5th Cir. 2010) .......................................................................... 16-17

*In re Wood*,
825 F.2d 90 (5th Cir. 1987) ..........................................................................12

*Kline v. Burke Construction Co.*,
260 U.S. 226 (1922) .....21

*Kugler v. Helfant*,
421 U.S. 117 (1975).....26

*Laychock v. Wells Fargo Home Mortg.*,
No. 09-2262, 2010 WL 4284525 (3d Cir. Nov. 1, 2010) .....28

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984).....14

*Pennzoil Co. v. Texaco, Inc.*,
481 U.S. 1 (1987).....24

*Pettibone Corp. v. Easley*,
935 F.2d 120 (7th Cir. 1991) .....10

*Port Auth. Police Benevolent Ass'n v. Port Auth.*,
973 F.2d 169 (3d Cir. 1992).....28

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923).....3, 28

*Samuels v. Mackell*,
401 U.S. 66 (1971).....27

*Stoe v. Flaherty*,
436 F.3d 209 (3d Cir. 2006).....12, 13, 27

*U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*,
166 F.3d 552 (3d Cir. 1999).....12

*United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko*,
885 F.2d 1170 (3d Cir. 1989).....23

*Vendo Co. v. Lektro Vend Corp.*,
433 U.S. 623 (1977).....21

*Younger v. Harris*,
401 U.S. 37 (1971).....3, 24, 25, 26, 27

*Zerand-Bernal Group, Inc. v. Cox*,
23 F.3d 159 (7th Cir. 1994) .....16

## STATUTES

11 U.S.C. § 105(a) ....................19

11 U.S.C. § 1123(a)(5)(B) ....................14

11 U.S.C. § 1141....................14, 17

28 U.S.C. § 1334....................2, 4, 9, 11, 27, 28

28 U.S.C. § 2283....................3, 18, 19

Defendants Hartford Accident and Indemnity Company, First State Insurance Company, and New England Insurance Company (collectively, "Hartford") move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (as incorporated in Fed. R. Bankr. P. 7012(b)), to dismiss in its entirety the Complaint brought against it by the above-captioned Plaintiffs.[1] In support of its Motion, Hartford respectfully submits this Memorandum of Law, demonstrating that this Court lacks subject-matter jurisdiction over the Complaint, and that the Complaint fails to state a claim for which relief may be granted.

## PRELIMINARY STATEMENT

1. As Plaintiffs openly avow, this action—while brought in federal bankruptcy court—seeks to prevent Hartford from taking discovery in a *state court* insurance coverage dispute, arising under state law. Plaintiffs are not debtors in bankruptcy. Rather, they are post-confirmation trusts (and others who claim an interest in the operation of those trusts), whose fundamental argument is that the cost and distraction associated with responding to discovery requests will interfere with their ability to resolve claims.

2. Whether Plaintiffs are right or wrong in that argument—and, as Hartford set forth in its Opposition to Plaintiffs' Motion for a Preliminary Injunction, they are wrong—one thing is clear: That argument belongs in *state court.* A post-confirmation entity is a creature of state law, and is subject to the requirements of state law. It cannot come to bankruptcy court seeking

---

[1] The Plaintiffs seeking relief are ACandS Asbestos Settlement Trust, Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust, Owens Corning/Fibreboard Asbestos Personal Injury Trust, and United States Gypsum Asbestos Personal Injury Trust (collectively, the "Trusts"); Trust Advisory Committee for the ACandS Asbestos Settlement Trust; Trust Advisory Committee for the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust, Trust Advisory Committee for the Owens Corning/Fibreboard Asbestos Personal Injury Trust, and Trust Advisory Committee for the United States Gypsum Asbestos Personal Injury Trust; and Hon. Dean M. Trafelet (Ret.), the Legal Representative for Future Claimants Against the United States Gypsum Asbestos Personal Injury Settlement Trust.

an injunction against proceedings in a state court of competent jurisdiction merely because it is unhappy with the burdens those proceedings may impose. Indeed, such a notion flouts long established and commonly understood principles of both bankruptcy law and federal jurisdiction.

3. This Court lacks the authority to grant the relief sought in the Complaint. *First*, post-confirmation bankruptcy jurisdiction is very narrow, and limited to matters having a close nexus to the deal between a debtor and its creditors reflected in the plan of reorganization. A post-confirmation trust is no different from any other entity created under state law, and subject to its requirements. As one court observed of the *Johns Manville* asbestos trust, "[e]ven though the Trust arose from the bankruptcy proceeding, once created it was subject to the state law of trusts," and "should be treated as is any other entity with the right to sue and be sued." *Falise v. The Am. Tobacco Co.*, 241 B.R. 48, 62 (E.D.N.Y. 1999). "A bankruptcy or district court does not possess a broad grant of power in perpetuity to protect a resulting trust governed by state law." *Id.*

4. Plaintiffs' contention, it appears, is that the discovery Hartford seeks in the state court violates the confidentiality terms of their TDPs, and therefore the relief they seek has a "close nexus" to the order confirming the plans in their bankruptcy cases. But that is not the case. As Section 1141 of the Bankruptcy Code makes clear, the TDPs are no more than a contract binding on the parties thereto—the Debtor and its creditors. While those parties are free to agree to maintain the confidentiality of information, their agreement, even if "approved" by the Court in an order confirming a plan, does not bind anyone other than those parties. Accordingly, Plaintiffs' effort to bar Defendants—who are not parties to the plans at issue and not bound by any confidentiality agreement—from obtaining such information through discovery has no "nexus" with the confirmation orders at all. And Plaintiffs' objections to the discovery of

confidential information is not a matter that by its nature can "arise *only* in bankruptcy," since they "could all be"—and indeed, have been—"filed in a state court." *See In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996) (emphasis added). This Court therefore has no jurisdiction over Plaintiffs' action.

5. *Second*, even if there were subject-matter jurisdiction, the Complaint would still fail to state a claim for which relief can be granted. The Federal Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. And both the Supreme Court and the Third Circuit have made clear that these specific statutory exceptions are to be construed very narrowly, and may not be "enlarged by loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 144 (3d Cir. 1998). Because none of the exceptions is applicable here, the relief sought in the Complaint is barred by the Anti-Injunction Act.

6. In fact, even absent the clear mandate of the Anti-Injunction Act, ordinary principles of federalism and comity, and the statutory abstention doctrines governing bankruptcy cases, would require the dismissal of the Complaint. It is long-settled law that a party unhappy with a ruling in state court is required to challenge that decision through the state court system. Federal courts do not entertain collateral challenges to state court orders with which a party (or a third party) disagrees. Outside of bankruptcy, that principle is reflected in the doctrine of *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37, 41 (1971), and in the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In the bankruptcy context, the mandatory abstention

principles (as applied to matters within the "related-to" jurisdiction) and the permissive abstention principles (as applied to all matters within the bankruptcy jurisdiction) reflected in Section 1334(c)(1) and (2) are similarly intended to ensure that ongoing state court proceedings are respected.

7. In short, basic respect for the authority and capabilities of the state court—in addition to the absence of subject-matter jurisdiction here—requires dismissal of the Complaint. Plaintiffs have provided no basis at all to question all state courts competence to weigh the importance of the information sought against their claims that complying with the requests would be burdensome, expensive, and distracting. If Plaintiffs are unhappy with how the state courts resolve that matter, they have recourse to whatever appellate remedies the state court system makes available. But they cannot—as they seek to do through this Complaint—"come running" into this Court because they find the prospect of state court rulings to be "unpleasant." *Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). The Complaint should be dismissed.

## BACKGROUND

8. Hartford is a defendant in an insurance-coverage action filed in 2006 in the Superior Court of New Jersey (the "State Court").[2] The plaintiffs in that litigation are Federal-Mogul Products, Inc. ("Federal-Mogul") and the Federal-Mogul U.S. Asbestos Personal Injury Trust (collectively, the "Federal-Mogul Parties"), neither of which is a party to this adversary proceeding. The central issue in the State Court litigation is whether the insurers have coverage obligations under state law for asbestos-related bodily-injury suits resolved pursuant to a

---

[2] *Federal-Mogul Prods., Inc. v. AIG Casualty Co.*, No. MRS-L-2535-06 (N.J. Super. Ct., Morris Cnty.).

settlement agreement (the TDPs) entered in connection with the bankruptcy without the insurers' consent. Highly relevant to that issue is whether the Federal-Mogul Parties settled invalid claims.

9. As this Court will recall, those issues were expressly reserved for determination by the State Court pursuant to a stipulation, approved by this Court, among Federal-Mogul, Hartford and other insurers. That stipulation expressly provides that the insurers would retain all of their "rights, claims, defenses or arguments they otherwise would be entitled to assert" in coverage litigation.[3]

10. In connection with the State Court litigation, on May 25, 2010, Hartford served a subpoena (the "Subpoena") on Verus Claims Services, LLC ("Verus"), a claims administrator for 14 asbestos trusts[4] that handles claims for a variety of manufacturing, construction, engineering, and installation companies. Two of those trusts are Plaintiffs in this adversary proceeding—the ACandS Asbestos Settlement Trust (the "ACandS Trust") and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust (the "Kaiser Trust").

11. In its Subpoena, Hartford seeks information that bears on the reasonableness of the Federal-Mogul Parties' settlement of its alleged asbestos liabilities. Specifically, Hartford

---

3 *See* Stipulation and Agreed Order at § 7(a), *In re Federal-Mogul Global Inc.*, No. 01-10578 (JKF) (Bankr. D. Del. July 24, 2006) [Dkt. No. 10113, Exhibit A]; Order, *In re Federal-Mogul Global Inc.*, No. 01-10578 (JKF) (Bankr. D. Del. Sept. 19, 2006) [Dkt No. 10606].

4 Those trusts are: (1) A&I Corporation Asbestos Bodily Injury Trust; (2) A-Best Asbestos Settlement Trust; (3) ACandS Asbestos Settlement Trust; (4) ARTRA 524(g) Asbestos Trust; (5) Burns and Roe Personal Injury Settlement Trust; (6) Combustion Engineering 524(g) Asbestos PI Trust; (7) H.K. Porter Asbestos Trust; (8) Kaiser Aluminum & Chemical Corporation Asbestos PI Trust; (9) Lummus 524(g) Asbestos PI Trust; (10) Plibrico Asbestos Trust; (11) Porter Hayden Bodily Injury Trust; (12) ASARCO Asbestos Personal Injury Settlement Trust; (13) G-I Holdings Inc. Asbestos Personal Injury Settlement Trust; and (14) THAN Asbestos Personal Injury Trust.

seeks information relevant to ascertaining whether the Federal-Mogul Parties' settlement will pay claims asserted by claimants who have not been injured by their alleged exposure to brake products manufactured by Wagner Electric Corporation (a Federal-Mogul affiliate) and/or will pay those claims in unreasonable amounts. Hartford believes that the information it seeks will likely show that the Wagner claimants have also asserted claims against, and have been paid by, asbestos trusts that assumed liabilities for asbestos companies that have nothing to do with each other, and against which one would expect there to be few overlapping claims. For purposes of the State Court coverage action, Hartford believes this information will support its argument that the Federal-Mogul Parties entered into an unreasonable settlement without Hartford's consent.

12. Verus objected to Hartford's Subpoena, and Hartford filed a motion to compel on July 29, 2010. In addition, several of the trusts for which Verus processes claims—including the ACandS Trust, one of the Plaintiffs in this adversary proceeding—moved in the State Court to intervene and to quash Hartford's Subpoena on September 7, 2010. Verus likewise filed its opposition to Hartford's motion on September 8, 2010. On October 27, 2010, the State Court referred Hartford's motion to compel to a special discovery master, Judge Douglas K. Wolfson, to consider in the first instance.

13. On the same day, October 27, 2010, the ACandS Trust (together with the Kaiser Trust and two other trusts, along with their respective Trust Advisory Committees and a Futures Representative) initiated this adversary proceeding in this Court, in which Plaintiffs ask this Court to enjoin the State Court from determining the discovery dispute pending before it.

14. At a case-management conference held on November 11, 2010, Judge Wolfson granted a request by Plaintiff ACandS Trust, Verus, and the other intervening trusts to brief the issue of whether Judge Wolfson should defer ruling on Hartford's motion to compel pending the

outcome of this adversary proceeding. But Judge Wolfson observed (as no party contested) that he continues to have jurisdiction to hear Hartford's pending motion, notwithstanding the filing of this action. Judge Wolfson thus scheduled oral argument on Hartford's motion to compel for November 23, 2010.

15. Plaintiffs now ask this Court to stop the State Court from deciding that issue. In their Complaint, Plaintiffs allege that the discovery requests by Hartford and parties in other pending proceedings are "extraordinarily burdensome and overbroad" and seek "to obtain discovery that no tort system participant would have access to" under applicable non-bankruptcy law. (Compl. ¶¶ 25, 55-67; Mot. Prelim. Inj. ¶¶ 27-36.) Evidently concerned that these arguments may not persuade the State Court to deny the requested discovery, Plaintiffs seek a ruling from this Court. They contend that it is appropriate for this Court to interfere with the State Court's management of discovery in coverage litigation pending before it, because years earlier, this Court presided over the bankruptcy proceedings that resulted in the formation of the Trusts and the emergence of the reorganized debtors from bankruptcy. (Compl. ¶ 27.)[5]

16. Furthermore, Plaintiffs attempt to link their present discovery dispute with Hartford to the distant antecedents in the prior reorganization proceedings, contending that the discovery Hartford seeks in the State Court coverage action is prohibited by the "confidentiality" provisions of the Plans' Trust Distribution Procedures. However, in the case of at least one Plaintiff, the Kaiser Trust, it appears that such confidentiality provisions were not even contained in the TDP at the time this Court confirmed the Plan, but were added post-confirmation.[6] In any

---

[5] The ACandS and Kaiser bankruptcy cases were both filed in 2002, and this Court entered orders confirming plans of reorganization in those cases in 2006 and 2008, respectively.

[6] *See* Second Amended Joint Plan of Reorganization, Exhibit 1.1(34) (TDP) (containing no confidentiality provision), *In re Kaiser Aluminum Corp.*, No 02-10429 (Bankr. D. Del. Sept. 7,

event, those confidentiality provisions merely provide that proof-of-claim materials submitted by asbestos claimants to the Trusts are "intended by the parties to be confidential"; "shall be treated as made in the course of settlement discussions between the holder and the Trust" and "protected by all applicable state and federal privileges, including … those directly applicable to settlement discussions"; and will not be disclosed by the Trusts except "with the permission of the holder … or in response to a valid subpoena of such materials issued by the Bankruptcy Court." (Compl. ¶¶ 35, 46.)[7] The Plans also provide that "nothing in the Plan or Plan Documents shall limit the right of any Asbestos Insurance Company, in any Asbestos Insurance Action or otherwise, to assert any Asbestos Insurer Coverage Defense."[8]

17. Plaintiffs seek a declaratory judgment that "the TDP permit discovery of an individual claimant's submissions to the Trust only to a party in an actual personal injury lawsuit by that claimant" and that "[n]o party or entity may obtain multiple claimant submissions from a

---

2005) [Dkt. No. 7312]; *see also* Order Confirming the Second Amended Joint Plan of Reorganization, As Modified ¶¶ 1 (Introduction), I.A., Exhibit B (approving plan modifications, which did not include TDP confidentiality provision), *In re Kaiser Aluminum Corp.*, No 02-10429 (Bankr. D. Del. Feb. 6, 2006) [Dkt. No. 8225]. The confidentiality provision Plaintiffs cite is section 6.5 of the Kaiser Aluminum & Chemical Corporation Third Amended Asbestos TDP, which is dated November 20, 2007, more than a year after this Court confirmed the Kaiser plan of reorganization. (Compl. ¶ 34.)

[7] *See* Second Plan of Reorganization of ACandS, Inc. Under Chapter 11 of the United States Bankruptcy Code, Exhibit 5 (TDP, as Exhibit 1 thereto, § 6.5), *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. Nov. 19, 2007) [Dkt. No. 3109].

[8] *See* Second Plan of Reorganization of ACandS, Inc. Under Chapter 11 of the United States Bankruptcy Code § 5.4(d), *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. Nov. 19, 2007) [Dkt. No. 3109]; *id.* § 1.15 (defining Asbestos Insurance Action to include "any claim, cause of action or right of the Debtor against any Asbestos Insurance Company related to any Asbestos Insurance Policy"); Second Amended Joint Plan of Reorganization § 5.6 ("Nothing in the Plan … shall limit the right of any PI Insurance Company, in any PI Insurance Coverage Action, to assert any PI Insurer Coverage Defense …."), *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Sept. 7, 2005) [Dkt. No. 7312].

Trust for any purpose, except as specifically authorized by this Court." (*Id.* ¶¶ 70-73.) Indeed, Plaintiffs do not even limit their request for a judgment to discovery requests directed to themselves, but go so far as to seek, pursuant to Section 105(a) of the Bankruptcy Code, preliminary and permanent injunctive relief "barring Defendants from having, continuing, or otherwise obtaining the discovery sought from the Trusts, *or any section 524(g) trust similarly situated*, by any means, including by subpoena to . . . Verus *or any other claims processing facility*." (*Id.* ¶¶ 74-80, prayer for relief.)

**ARGUMENT**

18. The Court should dismiss Plaintiffs' Complaint. This adversary proceeding concerns a discovery dispute in ongoing State Court coverage litigation between non-debtors that will have no effect on the reorganized debtors' former bankruptcy estates and that does not turn on any Plan provision or issue of bankruptcy law. The dispute's tangential connection to the reorganization proceedings that were concluded years ago provides no basis for the Court to exercise jurisdiction over such dispute under the narrowly confined scope of post-confirmation jurisdiction.

19. In any event, even if this Court had subject-matter jurisdiction, it has no authority under the Bankruptcy Code and the Anti-Injunction Act to enter an injunction (and related declaratory relief) barring Hartford from pursuing discovery in an ongoing coverage action pending before in State Court. Moreover, fundamental principles of federal-state comity, and the bankruptcy abstention provisions of 28 U.S.C. § 1334, independently require that Plaintiffs' complaint for injunctive and declaratory relief against the State Court be dismissed. If Plaintiffs wish to oppose the discovery Hartford seeks under the Subpoena, they should pursue such relief in the State Court, as the Trusts have done in the pending state court action and elsewhere.

## I. THIS COURT HAS NO SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' ACTION

20. It is well-established that the bankruptcy court's post-confirmation jurisdiction over matters involving the debtor or its successors is strictly circumscribed. Congress vested bankruptcy courts with jurisdiction to protect a financially troubled debtor and its bankruptcy estate while it restructures its liabilities under the Bankruptcy Code. But once the debtor has achieved that goal through confirmation of a plan of reorganization, the bankruptcy court's job is essentially done. This is equally true in Section 524(g) cases that have established trust to assume the debtor's asbestos liabilities. Thereafter, the reorganized debtor emerges from bankruptcy with a new capital structure, and the bankruptcy court retains jurisdiction, if at all, principally to ensure that the former debtor and its creditors honor the new deal they have struck under the plan.

21. Accordingly, "bankruptcy jurisdiction is extremely limited after a plan is confirmed." *Falise v. The Am. Tobacco Co.*, 241 B.R. 48, 58 (E.D.N.Y. 1999). "Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens." *Craig's Stores*, 266 F.3d at 390 (alteration in original); *accord In re Resorts Int'l, Inc.*, 372 F.3d 154, 164-65 (3d Cir. 2004). Put differently, bankruptcy courts "may not keep the [debtor] ... in perpetual tutelage ... by assuming jurisdiction over controversies between the reorganized corporation and third parties." *Falise*, 241 B.R. at 57 (internal quotation marks omitted) (alteration in original). "A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law." *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).

22. The relief Plaintiffs seek in this adversary proceeding flies in the face of this basic principle. Hartford is a party to a state court coverage action in which it seeks third-party discovery from Verus. This adversary proceeding seeks—years after this Court confirmed the plans that gave rise to the formation of the Trusts—to make use of the federal bankruptcy court to block that discovery. But Plaintiffs fail to articulate any basis for this Court to exercise jurisdiction over this discovery dispute, other than pointing to provisions in the Plans and this Court's Confirmation Orders providing for retention of jurisdiction. (Compl. ¶¶ 2-3.) That is insufficient. The Third Circuit has made clear that the "source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *Resorts Int'l*, 372 F.3d at 161 (internal quotation marks omitted). Accordingly, "[i]f there is no jurisdiction under 28 U.S.C. § 1334 ..., retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." *Id.* "[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket." *Id.* Plaintiffs have failed to meet their burden to show that this Court has subject-matter jurisdiction over their objections to the scope of discovery in state court, and this adversary proceeding must therefore be dismissed.

## A. Section 1334 Provides No Basis For Jurisdiction

23. Plaintiffs' failure to articulate the basis for jurisdiction with any specificity is not surprising, since none of the possible grounds for jurisdiction under § 1334 is present here. Section 1334 grants the district courts jurisdiction over four types of matters that it may refer to the bankruptcy courts under § 157: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Resorts Int'l*, 372 F.3d at 162 (internal quotation omitted); 28 U.S.C. § 1334(a)-(b). None of them includes Plaintiffs' suit. Plaintiff's action is not a "case[] under title 11," which

"refers merely to the bankruptcy petition itself." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991) (quoting *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987)).

24. Nor does Plaintiffs' action "arise under" the Bankruptcy Code. "Arising under" jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked," *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006), such as "an action by the trustee to avoid a preference." *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Plaintiffs' contention that the TDP confidentiality provisions bar the discovery does not mean their suit "arises under" the Bankruptcy Code, as the Code itself does not provide this "right." *See Stoe*, 436 F.3d at 217 ("The fact that federal bankruptcy law is implicated as a defense to Stoe's claim, does not change the fact that Stoe's claim itself does not 'arise under' title 11."). Nor are Plaintiffs pursuing any other cause of action that arises under the Bankruptcy Code.

25. Likewise, Plaintiffs' suit does not "aris[e] in a case under title 11." "[A]rising in" jurisdiction is limited to proceedings that "by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case," such as "allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, [and] orders permitting the assumption or rejection of contracts." *Id.* at 218. In other words, "[p]roceedings 'arise in' bankruptcy if they have no existence outside of the bankruptcy court." *U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999). Plaintiffs' objection to Hartford's discovery requests is plainly a proceeding that could exist outside of bankruptcy—indeed, it *does* exist outside of bankruptcy, in the pending State Court proceeding, where the Plaintiff ACandS Trust has intervened and presented *to the State Court* the same objections it seeks to raise here.

26. Nor does this proceeding "arise in" a bankruptcy case merely because Plaintiffs may lodge objections to such discovery based on the TDP's confidentiality provisions. While the confidentiality provisions Plaintiffs invoke here happen to be set out in the TDP, there is nothing about such confidentiality provisions that is peculiar to bankruptcy. Outside bankruptcy, parties enter into confidentiality agreements, and exchange documents in the course of settlement discussions, every day. And, outside bankruptcy, parties can and do raise objections to discovery of such materials based on confidentiality agreements or asserted settlement privileges. Thus, Plaintiffs' objections to the discovery Hartford seeks are plainly not proceedings that can "'arise *only* in bankruptcy,'" since they "could all be"—and, indeed, have been—"filed in a state court." *Guild & Gallery Plus*, 72 F.3d at 1178 (emphasis added).[9] Because nothing in the confirmation order purports to operate as a bar, binding on the world, of any and all discovery directed to the trusts, there is no sense in which this action is one to "enforce" that confirmation order, and thus one "arising in" the bankruptcy case. Indeed, if that were the source of jurisdiction, the Plaintiffs' position would need to be that the confirmation Order operates as a blanket prohibition of all discovery that might ever be sought against the trusts in any state court litigation, regardless of the relevance or significance of the discovery to the case in which it is sought. It is outlandish to believe that this Court would have intended to issue a confirmation

[9] *See also, e.g.*, *Stoe*, 436 F.3d at 213, 218-19 (holding that there was no "arising in" jurisdiction over creditor's suit under state statute imposing personal liability on the debtor's officers for unpaid severance, even though the suit "would not exist, but for the bankruptcy filing," and even though the officers' "liability under state law may be affected by the operation of the Bankruptcy Code," because the proceeding "can clearly exist outside the context of bankruptcy cases"); *Guild & Gallery Plus*, 72 F.3d at 1178 (holding that there was no "arising in" jurisdiction over adversary proceeding against a bankruptcy trustee for post-petition conversion of a third party's painting held in bailment at the debtor's gallery).

order so providing, and thus equally absurd to cast this action as an effort to "enforce" a confirmation order and therefore a proceeding "arising in" a bankruptcy case.

27. Finally, there is no "related to" jurisdiction over Plaintiffs' objections to Hartford's discovery requests, because resolution of those objections will not affect any bankruptcy estate or any integral aspect of the confirmed Plans. Proceedings are "related to" a bankruptcy case if their "outcome ... could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."). Here, however, there is no bankruptcy estate that could be affected, because the former debtors' bankruptcy estates ceased to exist upon confirmation of the Plans, when the property of the estate vested in the reorganized debtors, or was transferred to the Trusts. *See* 11 U.S.C. §§ 1123(a)(5)(B), 1141(b).[10] Because "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute," there can be no "related to" jurisdiction over such a dispute. *Resorts Int'l*, 372 F.3d at 165.

**B. Plaintiffs' Suit Has No "Close Nexus" To The Bankruptcy Cases**

28. Post-confirmation disputes that do not affect the "integrity of the bankruptcy process," or that are "essentially collateral to the bankruptcy case," are outside bankruptcy jurisdiction. *Id.* at 167. Rather, "[a]t the post-confirmation stage, the claim must affect an

---

[10] *See* Order Confirming ACandS's Second Plan of Reorganization Dated November 19, 2007 ¶¶ 8, 12, *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. May 6, 2008) [Dkt. No. 3309]; Second Plan of Reorganization of ACandS, Inc. Under Chapter 11 of the United States Bankruptcy Code §§ 5.2, 11.6, *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. Nov. 19, 2007) [Dkt. No. 3109]; Order Confirming the Second Amended Joint Plan of Reorganization, As Modified ¶¶ V.G.3., V.H.3., V.I.3., V.N., *In re Kaiser Aluminum Corp.*, No 02-10429 (Bankr. D. Del. Feb. 6, 2006) [Dkt. No. 8225]; Second Amended Joint Plan of Reorganization §§ 4.1, 5.1.d.(i), 5.2.d., 5.3.d., *In re Kaiser Aluminum Corp.*, No 02-10429 (Bankr. D. Del. Sept. 7, 2005) [Dkt. No. 7312].

integral aspect of the bankruptcy process—there must be a close nexus to the [bankruptcy] plan or proceeding." *Id.* at 167. Only proceedings that meaningfully "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan" provide such a "close nexus." *Id.*

29. Plaintiffs' discovery dispute with Hartford lacks such a "close nexus"—indeed, any meaningful nexus—to the bankruptcy plans at issue. Bankruptcy courts do not retain jurisdiction over trusts simply because they were formed under a confirmed plan or because such "trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." *Id.* at 167. Such an expansive view of bankruptcy jurisdiction would "raise the specter of 'unending jurisdiction' over continuing trusts." *Id.* The Third Circuit has thus held that the bankruptcy court lacked jurisdiction to hear a complaint by a plan-created litigation trust against its auditor, squarely rejecting the argument that "the affairs of post-confirmation trusts are effectively those of the estate ... for jurisdictional purposes." *Id.* at 169. "Though the Litigation Trust's assets ... were once assets of the estate, that alone does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy jurisdiction." *Id.*

Nor does the dispute's alleged impact on the Trust's resources, and ability to pay asbestos claims, provide the requisite "close nexus." (Compl. ¶¶ 37, 52-53.) Even assuming Plaintiffs could demonstrate such an impact,[11] the Third Circuit has rejected the argument that jurisdiction

---

[11] Although Plaintiffs allege that responding to discovery requests will impose costs that could "entirely frustrat[e]" the Trusts' "central purpose, the payment of claimants," (Mot. Prel. Inj. ¶ 28), the sole court order cited by Plaintiffs (*id.* ¶ 10 & n.6) that actually compels the production of documents provides that "[t]he Claims Processing Facilities and the Trusts shall be entitled to prompt reimbursement for their reasonable out-of-pocket costs of producing information in accordance with this order." *See Order Pursuant to Bankruptcy Rule 2004*, ¶ 10, *In re Motors Liquidation Co.*, Ch. 11 Case No. 09-50026 (Bankr. S.D.N.Y. Aug. 24, 2010) (Docket No. 6749).

exists over post-confirmation proceedings merely because those proceedings "will affect the former creditors as Litigation Trust beneficiaries." *Resorts Int'l*, 372 F.2d at 169. As it explained, the "former creditors … no longer have a close nexus to [the] bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims." *Id.* "Furthermore, if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts." *Id.* at 170.[12]

30. Finally, the provisions of the confirmed Plans provide no "close nexus" to Plaintiffs' state-court discovery dispute. Plaintiffs contend that the requested discovery violates the confidentiality provisions of the TDP. (Compl. ¶ 51.) But that contention misapprehends basic bankruptcy principles. A confirmed plan of reorganization, including incorporated trust documents like the TDP, "constitutes a binding contract between the debtor and its creditors." *In re Gryphon at the Stone Mansion, Inc.*, 204 B.R. 460, 462 n.4 (Bankr. W.D. Pa. 1997), *rev'd on other grounds*, 216 B.R. 764 (W.D. Pa. 1997), *aff'd*, 166 F.3d 552 (3d Cir. 1999); *accord In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010); *In re Texas Pig Stands, Inc.*, 610

[12] *See also, e.g., Craig's Stores of Tex., Inc.*, 266 F.3d 388, 391 (5th Cir. 2001) (rejecting argument that bankruptcy court had jurisdiction over post-confirmation contract dispute between debtor and creditor, which did not bear on the interpretation or execution of the plan, merely because the dispute "will affect [the debtor's] distribution to creditors under the plan") *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (rejecting argument that "by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price" and "in effect immunize such buyers from all state and federal laws that might reduce the value of the assets from the bankrupt" in order to "make the property of bankrupts … more valuable to the creditors"); *Falise v. The Am. Tobacco Co.*, 241 B.R. 48, 58-60 (E.D.N.Y. 1999) (although proceeding "might impact the distribution of the Trust by increasing assets available to the claimants," "the mere possibility of increasing the size of the Trust's assets post-confirmation is insufficient to create jurisdiction").

F.3d 937, 944 (5th Cir. 2010); *see also* 11 U.S.C. § 1141 (describing binding effect of confirmed plan). Accordingly, bankruptcy courts may exercise a narrow post-confirmation jurisdiction to interpret and enforce that contract if the former debtor or its creditors fail to honor their obligations under the plan.[13] But a confirmed plan does not bind the world. The TDP's confidentiality provisions may have the force of contract between the debtors—via their successors, the Trusts—and their asbestos creditors, but they do not bind strangers to the bankruptcy proceedings from seeking discovery in post-confirmation litigation between non-debtors. Nothing in the Bankruptcy Code authorizes a bankruptcy court to grant the debtor or a successor trust, in effect, immunity from discovery from all third parties in all future litigation in all federal and state courts in the country.

31. As a court addressing a very similar suit against third parties by the Manville Trust explained:

> Even though the Trust arose from the bankruptcy proceeding, once created it was subject to the state law of trusts. *See Findley*, 982 F.2d at 734 ("Just as a reorganized corporation is subject to state law, so also is a trust that emerges from a plan of reorganization."); *In re Joint E. & S. Dist. Asbestos Litig.*, 878 F. Supp. at 479. A bankruptcy or district court does not possess a broad grant of power in perpetuity to protect a resulting trust governed by state law.
>
> A trust created to effectuate a bankruptcy plan should be treated as is any other entity with the right to sue and be sued. Unless that entity comes within some special statutory exception, its position as a plaintiff in a federal court must be justified under diversity or federal question jurisdiction.

---

[13] *See, e.g.*, *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004) (noting post-confirmation jurisdiction existed "where the debtors failed to fund the reorganization plan and failed to pay unsecured creditors as required by the plan"); *In re Shenango Group Inc.*, 501 F.3d 338, 344 (3d Cir. 2007) (post-confirmation jurisdiction existed over dispute between reorganized debtor and its pension-plan claimants as to whether the reorganization plan's provisions obligated the debtor to fund the pension plan).

*Falise*, 241 B.R. at 62 (finding no bankruptcy jurisdiction over a post-confirmation proceeding by the Manville Trust seeking recovery from tobacco manufacturers for their role in contributing to asbestos-related injuries compensated by the trust). Precisely the same is true here. The post-confirmation Trusts are creatures of state law, engaged in state-court litigation over state-law issues. They have not established, and cannot establish, any jurisdictional basis for the federal courts to step in and referee that state-law dispute. The Court should dismiss the Complaint.

## II. THIS COURT HAS NO AUTHORITY TO ENJOIN THE STATE-COURT PROCEEDINGS

32. Even if this Court had subject-matter jurisdiction over Plaintiffs' suit, it would still lack the authority to grant the relief Plaintiffs seek, which is barred by the Anti-Injunction Act and offends principles of comity and federalism.

### A. The Injunction Is Barred By The Anti-Injunction Act

33. The Anti-Injunction Act mandates that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As the Supreme Court has explained, the Anti-Injunction Act is a "necessary concomitant of the Framers' decision to authorize … a dual system of federal and state courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). It embodies a long-standing congressional policy "under which state proceedings should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court." *Id.* (internal quotation marks). Even "when a state proceeding presents a federal issue," "the proper course is to seek resolution of that issue by the state court," which is "presumed competent to resolve federal issues." *Id.* at 149-50.

34. It is therefore settled law that "a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right." *Id.* at 149 (internal quotation marks omitted).[14] Rather, the Anti-Injunction Act stands as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). Those specific "exceptions are narrow and are not [to] be enlarged by loose statutory construction." *Chick Kam Choo*, 486 U.S. at 146 (internal quotation marks) (alteration in original). Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R.R.*, 398 U.S. at 297. None of the limited statutory exceptions applies here.

35. *First*, there is no applicable exception to the Anti-Injunction Act "expressly authorized by Act of Congress." Plaintiffs rely entirely on Section 105(a) of the Bankruptcy Code. While Section 105(a) may constitute an "expressly authorized" exception to the Anti-Injunction Act in appropriate circumstances, *see In re Davis*, 691 F.2d 176, 177-78 (3d Cir. 1982), that provision has no application here. Section 105(a) grants power only to enter injunctions that "carry out" the specific "provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to *carry out the provisions* of this title." (emphasis added)). Thus, Section 105(a) "does not give the court the power to create substantive rights that would otherwise be unavailable under the

---

14 Although Plaintiffs do not literally seek to enjoin the state court, but instead Hartford, "[i]t is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties." *Atlantic Coast Line R.R.*, 398 U.S. at 287.

[Bankruptcy] Code," *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (internal quotation marks omitted), which must instead "derive ultimately from some other provision of the … Code," *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (quoting Baird, *Elements of Bankruptcy* 6 (3d ed. 2001)).

36. No provision of the Bankruptcy Code, however, remotely addresses the permissible scope of discovery that may be had from an asbestos personal injury trust in post-confirmation litigation. And there are no Plan provisions to enforce pursuant to sections 1141 and 1142 of the Bankruptcy Code, since section 1141 of the Bankruptcy Code expressly provides that the confidentiality provisions of the TDP bind only the debtors' successor Trusts and their asbestos creditors, not third parties. Plaintiffs' requested injunction would not further any specific provision of the Bankruptcy Code, and therefore is not authorized by Section 105. Accordingly, Section 105 does not provide a statutory exception to the Anti-Injunction Act's prohibition against enjoining state-court proceedings.

37. *Second*, the injunction Plaintiffs seek is in no way "necessary in aid of [this Court's] jurisdiction." As the Third Circuit has made clear, this exception is "very narrow." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 144 (3d Cir. 1998). "[I]t is not enough that the requested injunction is related to [the federal court's] jurisdiction, but it must be '*necessary* in aid of' that jurisdiction." *Atlantic Coast Line R.R.*, 398 U.S. at 295. It applies only where "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.*

38. Accordingly, the "in aid of jurisdiction" exception has generally been construed to apply only "in removal cases (where a district court must ensure its exclusive governance of the

particular litigation removed) and in in rem cases (where, under the traditional view, only one court can entertain jurisdiction over a particular res)." *General Motors*, 134 F.3d at 145. A third, equally "narrow," application has been recognized "in the context of a complex class action which was also an MDL case where a settlement was imminent; where the federal court had already expended considerable time and resources; and where the pending state action threatened to derail the provisional settlement." *Id.* (citing *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1993)). And application of the "in aid of jurisdiction" exception was proper in that case only because of the extreme circumstances presented, in which the state-court litigants sought "to use the state action as a 'preemptive strike' against the federal suit, attempting to have the state court declare what the federal court should and should not do with respect to the federal settlement." *Id.*

39. This case does not even approach the situations in which courts have deemed application of the "in aid of jurisdiction" exception appropriate. The discovery Hartford seeks in the State Court proceeding is not a removed case; it is not a "preemptive strike ... to have the state court declare what the federal court should do" in a complex MDL settlement; and it does not involve any *in rem* dispute over title to property. Rather, the discovery dispute arises out of an *in personam* action to determine Hartford's obligations, if any, to non-debtor Federal Mogul for insurance coverage. *Cf. Vendo Co. v. Lektro Vend Corp.*, 433 U.S. 623, 642 (1977) ("The traditional notion is that in personam actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance. We have never viewed parallel in personam actions as interfering with the jurisdiction of either court." (citing *Kline v. Burke Construction Co.*, 260 U.S. 226, 43 (1922)); *Atlantic Coast Line R.R.*, 398 U.S. at 295-96 (state court's exercise of concurrent

jurisdiction over in personam action "did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that jurisdiction").

40. *Third*, the injunction Plaintiffs seek is not warranted to "protect or effectuate [this Court's] judgments." This "relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo*, 486 U.S. at 147. "It is founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Id.* Accordingly, "[a]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.* at 148. This prerequisite is "strict and narrow." *Id.* Here, the question at issue in the state-court proceedings—whether Hartford may obtain third-party discovery from Verus—is not a question that has ever been presented to, much less actually decided by, this Court. *Cf. Atlantic Coast Line R.R.*, 398 U.S. at 290 (federal court could not enjoin state court proceeding to protect its prior judgment under relitigation exception where point in dispute in state court was "never argued to the [federal] court" and there was "no language in the order that necessarily implies any decision on that question").

41. The Third Circuit's decision in *Drelles v. Metropolitan Life Ins. Co.*, 357 F.3d 344 (3d Cir. 2003), is instructive. There, as here, a party filed an action in federal court to enjoin state-court litigants from obtaining discovery against it in pending state-court proceedings. The federal plaintiff seeking the injunction had previously settled a MDL class action against it in federal court challenging its allegedly illegal sales practices. It argued that the federal court should enjoin the state-court litigants, who had opted out of the class-action settlement, from disturbing or relitigating the federal MDL case through their discovery efforts in the state-court

proceedings. In particular, it objected, much as Plaintiffs do here, that the state-court litigants improperly sought overbroad discovery of its conduct, on a nationwide basis, with respect to the litigants in the MDL class action, which it contended was not relevant to the state-court litigants' individual claims. Rejecting this "preemptive approach," the Third Circuit held that the Anti-Injunction Act barred the requested injunction of the state-court discovery. *Id.* at 346-47. It did so, even though the federal district court had opined below that the state-court discovery was "unreasonably broad," "duplicative," and "abus[ive]." *Id.* at 347. As the Third Circuit explained, "[t]o the extent that [the state-court litigants] may try to bring in evidence of nationwide practices that are irrelevant to their individual claims, … [the MDL defendant] is free to object to such evidence before the appropriate state courts, who are the proper authorities to make such evidentiary rulings." *Id.* at 346-47.

42. Every word of that Third Circuit holding applies here. If Plaintiffs believe the discovery Hartford seeks is improper, they should raise those objections in the State Court, as indeed, the ACandS Trust already has. The Anti-Injunction Act, however, bars them from obtaining a federal injunction to preempt the State Court's adjudication of that dispute. Nor can Plaintiffs make an end run around the Anti-Injunction Act by seeking declaratory relief that Hartford is not entitled to the discovery they seek to enjoin. "Where … declaratory relief would produce the same effect as an injunction, a declaratory judgment is barred if section 2283 would have prohibited an injunction." *United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko*, 885 F.2d 1170, 1175 (3d Cir. 1989). Plaintiffs' Complaint accordingly fails to state a claim on which relief may be granted and must therefore be dismissed.

**B. The Injunction Is Barred Under Principles Of Equity And Federal-State Comity**

43. Even apart from the Anti-Injunction Act, principles of federalism and comity mandate dismissal. The Supreme Court has enforced "a national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *See Younger v. Harris*, 401 U.S. 37, 41 (1971). "[T]his longstanding public policy against federal court interference with state court proceedings" is founded in part on "the basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief," and is "reinforced" by the principles of comity—"a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 43-44.

44. The Supreme Court thus reversed a federal injunction against a state-court criminal prosecution in *Younger* because the federal plaintiff had the opportunity to raise his federal constitutional claims in the state court, which is presumed competent to determine federal issues. *Id.* at 49-54. And while *Younger* itself involved a criminal prosecution, the bedrock principles of equity and federalism the Supreme Court articulated in that case have been applied more broadly to state civil proceedings that likewise implicate important state interests. Thus, in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), the Supreme Court reversed a federal injunction against a state-court action by Pennzoil to enforce a civil judgment against Texaco pending appeal, emphasizing "the importance to the States of enforcing the orders and judgments of their courts." *Id.* at 11-14. "So long as [a federal plaintiff's] challenges relate to pending state

proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.* at 14.

45. "The *Younger* abstention doctrine rests on a strong federal policy of noninterference with pending state judicial proceedings." *Coruzzi v. New Jersey*, 705 F.2d 688, 690 (3d Cir. 1983). The Third Circuit has made clear that this policy against federal interference must be given broad scope:

> Traditional principles of equity as well as federal-state comity demand that, "except in carefully circumscribed situations, the federal courts should not disrupt an ongoing state judicial process, either by preempting the adjudication of claims that could be brought to the state forum, by directing the state court to stay its proceedings, or by directly interfering in other ways with the natural course of state adjudication."

*Id.* (quoting *In re Grand Jury Proceedings (Wright II)*, 654 F.2d 268, 279 (3d Cir. 1981)). Applying this policy, the Third Circuit affirmed the dismissal of a federal civil rights action for declaratory and injunctive relief seeking to reinstate the pay of a suspended judge during the pendency of state-court proceedings to remove the judge from office, because the injunction threatened to "substantially interfere" with the state's interests "by preempting the adjudication of a claim which could have been raised in th[e state-court] proceeding." *Coruzzi*, 705 F.2d at 691-92; *see also In re Davis*, 691 F.2d 176, 178-79 (3d Cir. 1982) (affirming denial of section 105(a) injunction under *Younger* abstention because debtors could raise bankruptcy discharge defenses in state-court prosecution and "cost, anxiety, and inconvenience" to debtors of continued litigation did not justify infringement of federal-state comity).

46. Plaintiffs' request that this Court intervene to determine the scope of permissible discovery in a pending state-court action is precisely the kind of extraordinary interference with state proceedings that the *Younger* doctrine is designed to prevent. *Cf. Dubinka v. Judges of the Superior Ct.*, 23 F.3d 218, 223 (9th Cir. 1994) (noting that "*Younger* abstention has not been

limited to injunctions that apply to entire proceedings" and "'how much more reluctant [federal courts] must … be to intervene piecemeal to try collateral issues'" such as "enforcement of a discovery statute" or "individualized trial issues like the admissibility of evidence" (quoting *Kugler v. Helfant*, 421 U.S. 117, 130 (1975))).

47. Nor have Plaintiffs made any showing that they are unable to raise their discovery objections in state court. To the contrary, at least one of the Plaintiffs, ACandS Trust, has done just that. And the state court unquestionably has the jurisdiction and authority to decide those issues. Plaintiffs themselves acknowledge that "issues of discovery in tort cases are particularly within the purview of state courts." (Compl. ¶ 63.) Moreover, even if, as Plaintiffs contend, the TDP's confidentiality provisions had any bearing on this dispute (and as shown above, they do not), the State Court is perfectly competent to interpret and apply the TDP, or any other provision of the Plan or Order of this Court. The principles of federalism that "lie[] at the heart of the *Younger* doctrine," *Coruzzi*, 705 F.2d at 691, recognize that state courts are capable of applying federal law and construing orders of other courts, including federal courts, where doing so is relevant to proceedings otherwise properly before the state courts. *See, e.g.*, *In re Kmart Corp.*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) ("Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction. Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.").[15]

---

[15] *See also, e.g.*, *In re Cortellessa*, No. 05-24258, 2006 Bankr. LEXIS 1435, at *8 (Bankr. E.D. Pa. June 9, 2006) ("[S]tate courts have the power to interpret both Section 362 and bankruptcy court orders interpreting it."); *In re Conseco, Inc)*, No. 02-49672, 2004 Bankr. LEXIS 567, at *11 (Bankr. N.D. Ill. Jan. 28, 2004) ("The court recognizes that state courts are also capable of interpreting the discharge injunction and bankruptcy court orders."); *In re Tex. E. Transmission Corp. PCB Contamination Litig.*, MDL No. 764, 1997 U.S. Dist LEXIS, at *30

48. Moreover, as with the Anti-Injunction Act, Plaintiffs cannot seek to circumvent these principles by seeking a declaratory judgment that Hartford is not entitled to the discovery Plaintiffs seek to enjoin. *See Samuels v. Mackell*, 401 U.S. 66, 72-73 (1971) ("ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid," and thus "where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well").

49. The comity concerns that underpin *Younger* abstention doctrine are also reflected in the mandatory abstention provisions of 28 U.S.C. § 1334. Those provisions require bankruptcy courts to abstain from exercising jurisdiction over proceedings that are "related to" the bankruptcy case if such proceedings are, as here, "based upon a State law claim," and have been "commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2); *Stoe*, 436 F.3d at 214 ("Section 1334(c)(2) is based on comity and, on its face, reflects a congressional judgment that a party who wishes to litigate a state claim in a state court, but finds himself in a federal court solely because the controversy is related to a bankruptcy, should be able to insist upon a state adjudication if that will not adversely affect the bankruptcy proceedings").

50. Thus, to the extent that Plaintiffs may contend that this Court has jurisdiction to hear this adversary proceeding on grounds that it is purportedly "related to" the earlier

---

(E.D. Pa. Apr. 2, 1997) ("Notably, it has been held that, in a relitigation exception case, 'the proper forum for a complete investigation of the res judicata effects of the district court's judgment is the state court.' Although the res judicata effect of a federal court judgment is a matter of federal law, state courts 'are presumed competent to resolve federal issues.'" (quoted citations omitted)); *Ellman v. Hinkes*, 2007 WL 632968 (N.J. Super. Ct. Mar. 5, 2007) (per curiam) (interpreting order of federal district court).

bankruptcy cases, this Court would be required under section 1334(c)(2) to abstain from hearing it in deference to the pending State Court proceeding. Indeed, Congress's concern for comity runs so deep that, even in "core" bankruptcy proceedings "arising under" the Bankruptcy Code or "arising in" the bankruptcy case, it nonetheless gave bankruptcy courts the discretion to abstain from hearing any such proceedings "in the interest of comity with State courts or respect for State law." *See* 28 U.S.C. § 1334(c)(1).

51. These same principles of comity and federalism also underlie the *Rooker-Feldman* doctrine, which bars lower federal courts from granting relief that essentially rejects a state court's judgment, since the only courts with jurisdiction to review such judgments are the state's appellate courts and the U.S. Supreme Court (as to federal questions). *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Laychock v. Wells Fargo Home Mortg.*, No. 09-2262, 2010 WL 4284525, at *2 (3d Cir. Nov. 1, 2010) ("[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." (internal quotation marks omitted)); *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 973 F.2d 169, 177-79 (3d Cir. 1992) (*Rooker-Feldman* doctrine bars review of state-court interlocutory orders as well as final judgments). While the State Court has not yet issued a ruling on the pending discovery dispute, it is no less an affront to the proper functioning of the state judicial process for Plaintiffs to seek a federal injunction preempting the State Court from adjudicating the dispute in the first place.

## CONCLUSION

For the reasons stated, the Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

Dated: November 18, 2010

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Richard M. Beck*
Richard M. Beck (DE Bar No. 3370)
Sally E. Veghte (DE Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone: (302) 552-5517
Fax: (302) 426-9193
rbeck@klehr.com
sveghte@klehr.com

- and -

**SHIPMAN & GOODWIN LLP**
James P. Ruggeri
Joshua D. Weinberg
1133 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 469-7750
Fax: (202) 469-7751
jruggeri@goodwin.com
jweinberg@goodwin.com

- and -

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Craig Goldblatt
Danielle Spinelli
Joel Millar
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Fax: (202) 633-6363
craig.goldblatt@wilmerhale.com
danielle.spinelli@wilmerhale.com
joel.millar@wilmerhale.com

*Counsel for Defendants Hartford Accident and Indemnity Company, First State Insurance Company, and New England Insurance Company*