## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

**IN RE:**

**ACANDS, INC.**                            **Bankr. Case No. 02-12687 (JKF)**
                                            **Adv. No. 10-53721**
                                            **Related to Adv. Doc. No. 79**

**IN RE:**

**SPECIALTY PRODUCTS HOLDING**              **Bankr. Case No. 10-11780 (JKF)**
**CORP.**                                   **Adv. No. 10-53702**
                                            **Related to Adv. Doc. No. 76**

**IN RE:**

**KAISER ALUMINUM CORP.**                   **Bankr. Case No. 02-10429 (JKF)**
                                            **Adv. No. 10-53719**
                                            **Related to Adv. Doc. No. 102**

**IN RE:**

**OWENS CORNING**                           **Bankr. Case No. 00-03837 (JKF)**
                                            **Adv. No. 10-53720**
                                            **Related to Adv. Doc. No. 80**

**IN RE:**

**USG CORP.**                               **Bankr. Case No. 01-02094 (JKF)**
                                            **Adv. No. 10-53712**
                                            **Related to Adv. Doc. No. 84**

**ACANDS ASBESTOS SETTLEMENT**
**TRUST; KAISER ALUMINUM &**
**CHEMICAL CORPORATION ASBESTOS**
**PERSONAL INJURY TRUST; OWENS**
**CORNING/FIBREBOARD ASBESTOS**
**PERSONAL INJURY TRUST; and**
**UNITED STATES GYPSUM ASBESTOS**
**PERSONAL INJURY SETTLEMENT**
**TRUST,**

and

**TRUST ADVISORY COMMITTEES FOR
ACANDS ASBESTOS SETTLEMENT
TRUST, KAISER ALUMINUM &
CHEMICAL CORPORATION ASBESTOS
PERSONAL INJURY TRUST, OWENS
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST, and
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,**

**and**

**HON. DEAN M. TRAFELET (RET.),
LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS AGAINST THE
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,**

        **Plaintiffs,**

**v.**

**HARTFORD ACCIDENT INDEMNITY
CO.; FIRST STATE INSURANCE CO.;
NEW ENGLAND INSURANCE
COMPANY; NATIONAL UNION FIRE
COMPANY OF PITTSBURGH, PA;
AMERICAN HOME ASSURANCE CO.;
GARLOCK SEALING TECHNOLOGIES,
LLC; SPECIALTY PRODUCTS HOLDING
CORP.; DELAWARE CLAIMS
PROCESSING FACILITY, LLC; and
VERUS CLAIMS SERVICES, LLC,**

        **Defendants.**

# MEMORANDUM OPINION[1]

On February 22, 2011, this Court ordered the dismissal of the "Verified Complaint for Declaratory and Injunctive Relief" (hereinafter, the "Complaint") and the denial of the "Motion for Preliminary Injunction" as to all Plaintiffs except the ACandS Asbestos Settlement Trust (hereinafter, "ACandS Trust").[2]  This Court scheduled further proceedings to consider an issue unique to two subpoenas served upon Verus Claims Services (hereinafter "Verus"), which is the claims processing facility for several asbestos trusts, including the ACandS Trust.  The first subpoena was issued by the United States District Court for the District of New Jersey at the request of Defendant National Union Fire Insurance Company of Pittsburgh, PA (hereinafter, "National Union") together with Defendant American Home Assurance Company (hereinafter,

---

[1] This Opinion supplements our original Memorandum Opinion issued on February 22, 2011, Adv. No. 10-53719, Adv. Doc. No. 102; *ACandS Asbestos Settlement Trust v. Hartford Accident & Indemnity Co.*, 2011 Bankr. LEXIS 609 (Bankr. D. Del. Feb. 22, 2011) (hereinafter, the "February Opinion").

[2] Adversary Proceedings were ordered closed at Adv. No. 10-54719 (sic) (Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust); Adv. No. 10-53720 (Owens Corning/Fibreboard Asbestos Personal Injury Trust); and Adv. No. 10-53712 (United States Gypsum Asbestos Personal Injury Settlement Trust).  Order Dismissing Plaintiffs' Verified Complaint for Declaratory and Injunctive Relief; Denying Plaintiffs' Motion for Preliminary Injunction; and Scheduling Additional Proceedings as to ACandS, Adv. No. 10-53719, Adv. Doc. No. 103 (hereinafter, the "Order").

This Court recognizes that Adversary No. 10-53719 (incorrectly described in the Order as Adv. No. 10-54719) should not have been closed because all of the Adversary Proceedings had been consolidated to that number, and further proceedings were scheduled with respect to ACandS Trust.  In any event, Adv. No. 10-53719 remained open, and today's Opinion will be docketed at that number.  As in the February Opinion, all citations to the record in today's Opinion will refer to the appropriate docket number in Adversary Proceeding 10-53719.  Despite the consolidation at Adv. No. 10-53719, the February Opinion and the accompanying Orders were docketed at each of the individual adversary numbers listed in the caption.  As a result, we will docket this Supplemental Opinion and accompanying Order at each of the individual adversary numbers as well.

"American Home"), and the second was issued by the New Jersey Superior Court at the request

of Defendants Hartford Accident and Indemnity Company, First State Insurance Company, and

New England Insurance Company (collectively, "Hartford").[3]  Both subpoenas were served as

part of ongoing insurance coverage litigation between the Insurers and other entities unrelated to

ACandS' underlying bankruptcy case.[4]

In our February Opinion, we noted that § 6.5 of ACandS Trust's Trust Distribution

Procedures (hereinafter, "TDP") purports to restrict disclosure of asbestos claimants'

submissions to the Trust to instances where the claim holder consents to disclosure or in

response to a valid subpoena issued by "the Bankruptcy Court, a Delaware State Court or the

United States District Court for the District of Delaware."[5]  Thus, additional proceedings were

scheduled to consider: (1) the exact nature of § 6.5, whether it is a forum-selection clause or an

otherwise enforceable confidentiality provision, (2) which, if any, of the Insurers may be bound

by § 6.5 regardless of how it is characterized; and (3) whether the answers to questions (1) or (2)

affect our initial determination that this Court lacks subject matter jurisdiction to hear this

---

[3] For the remainder of this Opinion, for purposes of clarity, American Home, National Union, and Hartford will be referred to collectively as the "Insurers."

[4] American Home and National Union's cases are pending in the United States District Court for the District of Maryland.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., et al. v. Porter Hayden Co.*, 1:03-cv-03408-CCB, and *Porter Hayden Co., et al. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1:03-cv-03414-CCB.  Though pending in the District Court of Maryland, American Home and National Union issued the subpoena against Verus, which is located in New Jersey, from the District Court of New Jersey pursuant to Rule 45(a)(2)(C) of the Federal Rules of Civil Procedure.
Hartford's case is pending in the New Jersey Superior Court, and it issued its subpoena from that court.  *Federal-Mogul Prods., Inc. v. AIG Casualty Co.*, No. MRS-L-2535-06 (N.J. Super. Ct., Morris Cnty.).

[5] ACandS Trust TDP, § 6.5.

4

dispute.

After careful consideration, we find that in the context of this case, this Court lacks subject matter jurisdiction to resolve the issues of whether § 6.5 of the ACandS TDP operates as a forum-selection clause and who may be bound by it, even though the resolution of those issues involves nothing more than interpreting a TDP provision and related documents, all of which are incorporated into a plan confirmed by this Court. Moreover, here – where the outcome of the discovery dispute will have no effect on the debtor, the debtor's estate, or the implementation of the confirmed plan; where the determination regarding the operation of § 6.5 will turn on issues of general contract law rather than on any integral issues of bankruptcy law; and where the dispute was first raised in a state court where it is currently pending – we find that even if subject matter jurisdiction existed, it would be inappropriate for this Court to exercise that jurisdiction. Thus, even if we are in error as to our finding that we lack subject matter jurisdiction, we would nevertheless abstain from deciding the issues before us in deference to the courts in which this discovery dispute is pending. Accordingly the Complaint must be DISMISSED and the Motion for Preliminary Injunction must be DENIED.[6]

---

[6] In the February Opinion, when this Court scheduled additional proceedings as to ACandS Trust, we excluded Plaintiff Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust (hereinafter, "Kaiser Trust") from the additional proceedings because, although Kaiser Trust claimed that its TDP contained a provision substantially similar to § 6.5 of ACandS Trust's TDP, we noted that the TDP that was actually attached to Kaiser Trust's Confirmation Order approved by this Court did not have such a provision. Kaiser Trust filed a "Motion for Reconsideration," arguing that while the incorrect version of its TDP may have been physically attached to the Confirmation Order, the latest version of its TDP, containing the language similar to § 6.5, had been filed with the Court before the Confirmation Order was signed and therefore this latest version is, in fact, the TDP in operation. However, because we are declining to resolve this dispute despite § 6.5 of ACandS Trust's TDP, whether or not Kaiser Trust's TDP contains a substantially similar provision is irrelevant. Kaiser Trust, like ACandS Trust, will have an opportunity to raise this issue in the appropriate fora. Kaiser Trust's Motion

As we stated in the February Opinion, the source of this Court's subject matter jurisdiction "is neither the Bankruptcy Code nor the express terms of the Plan.  The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157."  *In re Resorts Int'l*, 372 F.3d 154, 161 (3d Cir. 2004) (quoting *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002)).  Pursuant to these statutes, "the bankruptcy court potentially has jurisdiction over four types of title 11 matters . . . (1) cases under Title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11."  *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991) (citations omitted).

We have previously rejected ACandS Trust's argument that this Court has "arising in" jurisdiction to hear this dispute.  The key to finding "arising in" jurisdiction is to ask whether the proceeding "by [its] nature, *not [its] particular factual circumstance*, could *only* arise in the context of a bankruptcy case."  *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)) (emphasis added).  The nature of this proceeding is a discovery dispute, arising in the course of insurance coverage litigation, whereby the Insurers have sought information from the trusts and the trusts are essentially objecting to the scope of the subpoenas.  The circumstances of the dispute include ACandS Trust's contention that the subpoenas violate § 6.5 of its TDP because they were not issued from a jurisdiction authorized by that section.  ACandS Trust attempts to frame the dispute narrowly, as one to "interpret a provision of a Plan document, i.e., whether the language of TDP § 6.5 functions as a forum-

---

for Reconsideration will therefore be DENIED.

selection clause and, if so, whether the clause is enforceable on that or any other basis"[7] to argue that the dispute could arise only in the context of a bankruptcy case.  This characterization may color the general nature of the proceeding with the factual circumstances particular to it, but it does not, in this Court's view, change the nature of the dispute.

By its nature, the discovery dispute at the core of the pending matter is one that occurs commonly in litigation outside of bankruptcy, as confidentiality concerns and questions regarding scope are often raised in response to discovery requests.  Not only is the instant discovery dispute, by its nature, not one that could arise *only* in the context of a bankruptcy case, but in fact, ACandS Trust and Verus have already intervened in Hartford's state court action seeking to quash Hartford's subpoena, and the state court judge has referred the matter to a special discovery master, Judge Wolfson, where the dispute is pending.[8]  Therefore, "arising in" jurisdiction does not exist in this case.

With respect to § 6.5 of the ACandS Trust TDP, this Court ordered additional proceedings to determine (1) whether that section operated as a forum-selection clause or otherwise, (2) which Insurers, if any, are bound by that section, and (3) whether the fact that this Court necessarily has to interpret § 6.5 to decide those issues creates a close nexus to ACandS' underlying bankruptcy sufficient to create "related to" jurisdiction in this Court.  Before we discuss § 6.5 in greater detail, we will briefly overview the Third Circuit's stance on "related to"

_____

[7] ACandS Asbestos Settlement Trust's Reply Brief in Support of its Memorandum of Law Regarding Section 6.5 of its Trust Distribution Procedures, Adv. No. 10-53719, Adv. Doc. No. 130, at 8 (citing the February Opinion, at *44).

[8] Memorandum of Law in Support [of] Hartford's Motion to Dismiss, Adv. No. 10-53719, Adv. Doc. No. 31, at 6, ¶¶ 12-14.

jurisdiction.  The analysis begins with *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), in

which the Third Circuit stated that bankruptcy courts have jurisdiction over a proceeding if "the

outcome of that proceeding could conceivably have any effect on the estate being administered

in bankruptcy."  *Id.* at 994.  "The Supreme Court has explained that the critical component of the

*Pacor* test is that 'bankruptcy courts have no jurisdiction over proceedings that have no effect on

the estate of the debtor."  *In re Resorts, Int'l*, 372 F.3d at 164 (quoting *Celotex Corp. v.*

*Edwards*, 514 U.S. 300, 308 (1995)).  Technically, because the estate of the debtor ceases to

exist upon confirmation, there can never be jurisdiction in the bankruptcy court over post-

confirmation disputes.  *Id.* at 165 (citing *In re Fairfield Cmtys., Inc.*, 142 F.3d 1093, 1095 (8th

Cir. 1998)).  Nevertheless, courts have noted that it is impractical to apply this rule so rigidly,

and have recognized post-confirmation jurisdiction in limited circumstances.  *Id.*[9]  The difficulty

lies in figuring out the extent of those limited circumstances, and it is around this issue where the

law becomes quite murky.

The "essential inquiry appears to be whether there is a close nexus to the bankruptcy plan

or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter."  *Id.* at 166-67.

The *Resorts* court noted that one significant factor regarding whether the "close nexus" standard

is satisfied is whether the dispute is one that is "essentially collateral to the bankruptcy case," or

whether it implicates the integrity of the bankruptcy process.  *Id.* at 167 (quoting *Donaldson v.*

*Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997)).  In other words, "At the post-confirmation stage,

the claim must affect an integral aspect of the bankruptcy process."  *Id.*

---

[9] The *Resorts* court noted that although post-confirmation jurisdiction is assumed by 11
U.S.C. § 1142(b), the sole source of jurisdiction remains in 28 U.S.C. §§ 1334 and 157.  *Id.*
(citing *In re U.S. Brass Corp.*, 301 F.3d at 306).

We acknowledge that the addition of § 6.5 makes the determination as to "related to" jurisdiction difficult.  To begin with, this Court is not asked to determine the merits of the underlying discovery dispute, i.e. whether the scope of the discovery is unduly burdensome or broad.  Rather, we are asked only to interpret a section of a TDP, which is incorporated into a plan confirmed by this Court, to determine how the section operates and whom it may bind.  Whether a court must interpret a plan or plan documents to resolve a dispute is clearly a factor in determining whether subject matter jurisdiction exists.  In its analysis of post-confirmation jurisdiction, the *Resorts* court noted that in the case of *In re Haws*, "[n]owhere in the lawsuit is the bankruptcy court being asked to construe or interpret the confirmed plan."  *Id.* at 168 (quoting *In re Haws*, 158 B.R. 965, 971 (Bankr. S.D. Tex. 1993)).  The *Resorts* court then explained that in its case, "Resolution of this matter will not require a court to interpret or construe the plan or the incorporated Litigation Trust Agreement."  *Id.* at 170.  In contrast, the pending dispute will require a court to interpret the ACandS TDP and related documents; however, nearly every other factor tends to weigh against finding "related to" subject matter jurisdiction.

First, the instant dispute will not have any effect whatsoever on the debtor, which is now reorganized ACandS.  Nor will the dispute affect the debtor's estate, which no longer exists.  Furthermore, the resolution of this dispute will not have any effect on the implementation, execution, or administration of the confirmed plan.  The dispute is thus entirely collateral to the underlying bankruptcy case, which concluded years ago.[10]  ACandS Trust has argued that the

---

[10] ACandS's Second Plan of Reorganization was confirmed by order of this Court on May 8, 2008.  Order Confirming ACandS's Second Plan of Reorganization Dated November 19, 2007, Bankr. No. 02-12687, Doc. No. 3309.

dispute affects the assets in the Trust because having to oppose or even comply with the discovery requests dwindles the assets that would otherwise go to pay asbestos claimants.  While we do not doubt that the burden of responding to discovery will necessarily decrease Trust assets, nothing in the confirmed plan purports to insulate the Trust from discovery issued at the request of third parties, and the cost of responding to those requests follows as a natural consequence.  Moreover, "if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant."  *In re Resorts Int'l*, 372 F.3d at 170.

Additionally, any effect our resolution of this discovery dispute would have on the Trust assets is speculative for two reasons.  First, with respect to the subpoena issued by Hartford, the motion to compel production served against Verus states that both Verus and the ACandS Trust shall be entitled to reimbursement for any out-of-pocket expenses they incur in responding to the requests.[11]  Secondly, and from a more general standpoint, § 6.5 of the ACandS Trust TDP does not itself limit the scope of discovery that can be requested upon the Trust.  It does nothing more than attempt to limit the jurisdiction in which subpoenas can be issued to the courts sitting in Delaware.  Thus, were we to hold that § 6.5 has been violated, that determination would not necessarily afford the ACandS Trust the relief it seeks in the form of limiting the scope of the discovery requests.  Even under the terms of § 6.5, subpoenas regarding discovery requests can come from either the state or federal courts in Delaware, so our determination that an Insurer obtained a subpoena from an unauthorized jurisdiction would not prevent it from obtaining a

---

[11] Memorandum of Law in Support [of] Hartford's Motion to Dismiss, Adv. No. 10-53719, Adv. Doc. No. 31, at 15, ¶ 29 n.11.

subpoena from a Delaware court.  Furthermore, a subpoena issued from either the state or district court in Delaware would not necessarily be any narrower in scope than a subpoena issued from the state court in New Jersey.  Were that the case, the Trust would find itself in the same position it currently faces.  Moreover, this Court would have no authority to limit the scope of the discovery requests in that scenario because it would not be the issuing court.   As we stated in the February Opinion, the issuing court is the appropriate forum to determine issues regarding the subpoena.  Therefore, we are unpersuaded that the potential effect on Trust assets creates the close nexus to the bankruptcy case necessary for "related to" jurisdiction.

Also weighing against jurisdiction in this case is the fact that, because the ACandS Trust TDP is part and parcel of a settlement,  the resolution of this dispute will turn on the analysis and interpretation of general contract law rather than on any integral issue of bankruptcy law. Accordingly, we find no reason why any of the issuing courts in this case, or the courts where the underlying dispute is pending, cannot competently adjudicate this matter.  We note that this issue was raised by ACandS Trust as to Hartford's subpoena in the New Jersey Superior Court before filing a complaint in this Court, a factor that weighs heavily in favor of this Court staying its hand.  To the extent that ACandS has not similarly intervened with respect to the subpoena issued at the request of American Home and National Union, it nonetheless has an opportunity to raise that issue in the appropriate forum – i.e., the District Court of New Jersey, where the subpoena was issued, or in the District Court of Maryland, where American Home and National Union are engaged in the underlying litigation.

In light of the several factors weighing against finding subject matter jurisdiction, and with the only connection to the underlying bankruptcy case being § 6.5 of the ACandS Trust

TDP, the critical question becomes:  Does the fact that the resolution of this dispute requires a court to interpret a provision in a plan document, by itself, create a close nexus to the bankruptcy plan or proceeding sufficient to uphold "related to" jurisdiction?  As we have indicated, this is a difficult question, but in light of the context and circumstances of this case, in our view the answer is no.  The critical inquiry is not strictly whether the plan must be interpreted to resolve the dispute, it is rather whether the resolution of the dispute will have any affect on the "interpretation, implementation, consummation, execution, or administration of the confirmed plan."  *In re Resorts Int'l*, 372 F.3d at 167.

ACandS Trust argues that our statement that, "This court has subject matter jurisdiction to interpret and implement the Plan and its administration" in the February Opinion constitutes law of the case.[12]  This argument is without merit.  We did not hold in the February Opinion that we had subject matter jurisdiction over this dispute, and in fact, held the opposite as to all Plaintiffs except for ACandS Trust, as to which we sought additional briefs.  With regard to ACandS Trust, we expressly stated that the existence of § 6.5 "does not necessarily mean that the bankruptcy court is the appropriate jurisdiction to litigate all issues surrounding the subpoena and related discovery.  *Subject matter jurisdiction must still exist under §§ 1334 and 157*."  February Opinion, at *37 n.10 (emphasis added).

The sole fact that the plan or plan documents must be interpreted to resolve a dispute is not enough to create a close nexus to the bankruptcy and thereby confer subject matter jurisdiction over that dispute.  Were that the case, then retention of jurisdiction provisions in a

_____

[12] AcandS Asbestos Settlement Trust's Memorandum of Law Regarding Section 6.5 of its Trust Distribution Procedures, Adv. No. 10-53719, Adv. Doc. No. 116, at 11 (citing the February Opinion, at *32).

plan would seemingly always create jurisdiction, since a retention of jurisdiction provision in a plan can only be effective against parties bound by the plan, thus requiring a court to interpret the plan documents to determine whether a party is bound by the plan or by that specific provision. Yet, we know that retention of jurisdiction provisions do not by themselves confer subject matter jurisdiction, despite the fact that reference to the plan or plan documents might be necessary to determine who is bound by such a provision. The Third Circuit articulates clearly that if "there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." *In re Resorts Int'l*, 372 F.3d at 161. "Neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *Id.*

In this case, the only connection to the bankruptcy is that a provision in ACandS Trust's TDP attempts to limit to Delaware courts the fora in which subpoenas can be issued against the Trust. The allegation is that certain insurers purportedly violated that provision by issuing subpoenas from unauthorized jurisdictions. That issue can be raised in the issuing courts. The underlying dispute, pending in the New Jersey Superior Court and the District Court of Maryland, has nothing to do with the bankruptcy case, the reorganized debtor, the debtor's estate, or the implementation, execution, or administration of the confirmed plan. As a result, we find in weighing the factors that this Court lacks subject matter jurisdiction over this dispute.

Regardless of whether this Court is correct in determining that subject matter jurisdiction is lacking in this case, this Court would nevertheless abstain from deciding the issues related to § 6.5 of the AC&S Trust TDP in deference to the New Jersey Superior Court and the District Courts of New Jersey and Maryland. As to Hartford, even if this Court is incorrect in finding

that there is no "related to" jurisdiction over this matter, we would be required to abstain

pursuant to 28 U.S.C. § 1334(c)(2), because the issue is pending and can be timely adjudicated in

the New Jersey Superior Court.  As to American Home and National Union, this Court has

discretion to abstain under 28 U.S.C. § 1334(c)(1), and we would exercise that discretion in

deference to the District Court of Maryland and the District Court of New Jersey, as those fora

are certainly capable and, in this instance, more appropriate to determine the issues related to

these discovery subpoenas.

     Accordingly, The Complaint will be DISMISSED, the Motion for Preliminary Injunction

DENIED, and Kaiser Trust's Motion for Reconsideration DENIED.


     An appropriate order will be issued.


Dated: 8/8/2011
10:23:23

Dated: _____

_Judith K. Fitzgerald_
     Judith K. Fitzgerald   **cjs**
     United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

**IN RE:**

| | |
|---|---|
| **ACANDS, INC.** | **Bankr. Case No. 02-12687 (JKF)**<br>**Adv. No. 10-53721**<br>**Related to Adv. Doc. No. 79** |

**IN RE:**

| | |
|---|---|
| **SPECIALTY PRODUCTS HOLDING CORP.** | **Bankr. Case No. 10-11780 (JKF)**<br>**Adv. No. 10-53702**<br>**Related to Adv. Doc. No. 76** |

**IN RE:**

| | |
|---|---|
| **KAISER ALUMINUM CORP.** | **Bankr. Case No. 02-10429 (JKF)**<br>**Adv. No. 10-53719**<br>**Related to Adv. Doc. No. 102** |

**IN RE:**

| | |
|---|---|
| **OWENS CORNING** | **Bankr. Case No. 00-03837 (JKF)**<br>**Adv. No. 10-53720**<br>**Related to Adv. Doc. No. 80** |

**IN RE:**

| | |
|---|---|
| **USG CORP.** | **Bankr. Case No. 01-02094 (JKF)**<br>**Adv. No. 10-53712**<br>**Related to Adv. Doc. No. 84** |

**ACANDS ASBESTOS SETTLEMENT TRUST; KAISER ALUMINUM & CHEMICAL CORPORATION ASBESTOS PERSONAL INJURY TRUST; OWENS**

**CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,**

**and**

**TRUST ADVISORY COMMITTEES FOR
ACANDS ASBESTOS SETTLEMENT
TRUST, KAISER ALUMINUM &
CHEMICAL CORPORATION ASBESTOS
PERSONAL INJURY TRUST, OWENS
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST, and
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,**

**and**

**HON. DEAN M. TRAFELET (RET.),
LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS AGAINST THE
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT
TRUST,**

   **Plaintiffs,**

**v.**

**HARTFORD ACCIDENT INDEMNITY
CO.; FIRST STATE INSURANCE CO.;
NEW ENGLAND INSURANCE
COMPANY; NATIONAL UNION FIRE
COMPANY OF PITTSBURGH, PA;
AMERICAN HOME ASSURANCE CO.;
GARLOCK SEALING TECHNOLOGIES,
LLC; SPECIALTY PRODUCTS HOLDING
CORP.; DELAWARE CLAIMS
PROCESSING FACILITY, LLC; and
VERUS CLAIMS SERVICES, LLC,**
   **Defendants.**

16

**ORDER DISMISSING PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF; DENYING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION; AND DENYING KAISER TRUST'S MOTION FOR
RECONSIDERATION**

**AND NOW**, this **8th** day of **August, 2011**, for the reasons expressed in the foregoing

Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Plaintiff's

"Verified Complaint for Declaratory and Injunctive Relief" is hereby **DISMISSED** in its entirety

in Adversary Proceeding No. 10-53721 (consolidated at Adv. No. 10-53719); and

      It is **FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction is hereby

**DENIED** in Adversary Proceeding No. 10-53721 (consolidated at Adv. No. 10-53719);

and

      It is **FURTHER ORDERED** that the "Motion of Kaiser Aluminum & Chemical

Corporation Asbestos Personal Injury Trust to Reconsider Order Dismissing Plaintiffs' Verified

Complaint for Declaratory and Injunctive Relief" is hereby **DENIED** in Adversary Proceeding

No. 10-53719; and

      It is **FURTHER ORDERED** that the Clerk shall close Adversary Proceeding

No. 10-53721 (consolidated at Adv. No. 10-53719); and Adversary Proceeding No. 10-53719;

and

      It is **FURTHER ORDERED** that counsel for the Plaintiffs shall serve a copy of this

Memorandum Opinion and Order on all parties in interest who do not receive electronic notice

and shall file a certificate of service within five (5) days hereof.

Dated: 8/8/2011
10:24:25

*Judith K. Fitzgerald*    **cjs**
Judith K. Fitzgerald
United States Bankruptcy Judge

17